**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

LOIS K. MYERS,

        Plaintiff,

vs.

CROELL REDI-MIX, INC.,

        Defendant.

No. 08-CV-2043-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.    RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . **2**

*III.   SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . **3**

*IV.   MOTION TO STRIKE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*V.    SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . **4**

*VI.   RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . **5**

     *A.    Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     *B.    Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     *C.    Sexual Harassment Policy* . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *D.    Eugene Schmitt* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
     *E.    Plaintiff Reports Schmitt's Behavior* . . . . . . . . . . . . . . . . . . **8**
     *F.    Schmitt's Post-Reporting Behavior* . . . . . . . . . . . . . . . . . . . **9**
     *G.    Offensive Behavior by Other Employees* . . . . . . . . . . . . . . . . **9**
     *H.    Joanie Groth* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
     *I.     Fly Ash Mistake* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
     *J.    Termination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     *K.    ICRC and EEOC Charges* . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*VII.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

     *A.    Termination Based on Sex* . . . . . . . . . . . . . . . . . . . . . . . . . **13**
          *1.    Direct evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
          *2.    Inference of sex discrimination* . . . . . . . . . . . . . . . . . **15**

|  | | *a.* | **McDonnell Douglas** *Framework* . . . . . . . . . . . . . . . | **15** |
|  | | *b.* | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . | **15** |
| **B.** | **Retaliation Claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **20** |
| **C.** | **Disparate Treatment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **22** |
| **D.** | **Hostile Work Environment** . . . . . . . . . . . . . . . . . . . . . . | **25** |
|  | *1.* | *Severe or pervasive harassment* . . . . . . . . . . . . . . . . . . | **26** |
|  | | *a.* | *Harassment prior to July 28, 2003* . . . . . . . . . . . . . | **27** |
|  | | *b.* | *Harassment after July 28, 2003* . . . . . . . . . . . . . . | **28** |
|  | *2.* | *Defendant's knowledge of harassment* . . . . . . . . . . . . . . | **30** |
|  | | *a.* | *Actual knowledge* . . . . . . . . . . . . . . . . . . . . . | **31** |
|  | | *b.* | *Constructive knowledge* . . . . . . . . . . . . . . . . . . | **33** |
|  | | *c.* | *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . | **34** |
|  | *3.* | **Ellerth-Faragher** *defense* . . . . . . . . . . . . . . . . . . . . . | **35** |
| **VIII.** | **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **36** |

## I. INTRODUCTION

The matters before the court are Defendant Croell Redi-Mix, Inc.'s "Motion for Summary Judgment" ("Motion") (docket no. 15) and "Motion to Strike Certain Affidavits Submitted by Plaintiff" ("Motion to Strike") (docket no. 23).

## II. RELEVANT PROCEDURAL BACKGROUND

On June 6, 2008, Plaintiff Lois K. Myers filed a Complaint (docket no. 2) against Defendant. In the Complaint, Plaintiff alleges that Defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, Plaintiff alleges that Defendant discriminated against Plaintiff because of her sex. On August 21, 2008, Defendant filed an Answer (docket no. 5) in which it denied the substance of Plaintiff's claims.

On August 27, 2009, Defendant filed the Motion. On September 17, 2009, Plaintiff filed a Resistance (docket no. 20). On September 28, 2009, Defendant filed a Reply (docket no. 22).

That same date, Defendant filed the Motion to Strike. On October 9, 2009, Plaintiff filed a Resistance (docket no. 28) to the Motion to Strike. That same date, Defendant filed

a Reply (docket no. 29).

### III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Plaintiff's Title VII claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

### IV. MOTION TO STRIKE

In the Motion to Strike, Defendant asks the court to strike two affidavits that Plaintiff submitted in support of her Resistance. The affidavits are from two former employees of Defendant, Misty Troester and Jon Leiran. Defendant argues that the affidavits should be stricken because Plaintiff failed to: (1) disclose these individuals as witnesses in the initial disclosures required by Federal Rule of Civil Procedure 26(a)[1] and (2) identify Troester or Leiran in response to Defendant's interrogatory asking Plaintiff to "identify each person who has or claims to have any knowledge of the facts and circumstances relating to the allegations of the [C]omplaint." Def. Brief (docket no. 23-2) at 1.

Plaintiff concedes that she failed to disclose Troester and Leiran in her Rule 26(a) disclosures and discovery. However, Plaintiff argues that Defendant will not be prejudiced by the court's consideration of the affidavits. Plaintiff argues that, if the court denies the Motion, Defendant will have sufficient time to depose Troester and Leiran prior to trial. Trial in the instant action is currently scheduled for the two-week period commencing on January 19, 2010.

For purposes of the Motion, the court shall consider the Leiran and Troester affidavits. However, the court finds that, even when it considers the affidavits, Plaintiff

---

[1] Federal Rule of Civil Procedure 26(a) requires a party to disclose, without awaiting a discovery request, "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1).

fails to put forth sufficient evidence to create a genuine issue of material fact with regard to her Title VII claims. Accordingly, the court shall deny the Motion to Strike. In light of the fact that the court shall grant the Motion, the court finds that Defendant is not prejudiced by the court's consideration of the affidavits.

## V.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has

successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI. RELEVANT FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Plaintiff and affording her all reasonable inferences, the undisputed facts are as follows:

### A. Parties

Plaintiff is a 54-year-old-female. She resides in Lawler, Iowa. Defendant is an Iowa corporation with its principal place of business in New Hampton, Iowa. Defendant produces ready-mix concrete and operates concrete plants throughout Iowa and elsewhere.

### B. Employment

On July 25, 1995, Defendant hired Plaintiff for a powder hauler position. As a powder hauler, Plaintiff drove a semi-tractor and trailer ("truck") and was also responsible for the general maintenance of her truck. Plaintiff picked up cement powder in Mason City, Iowa and "fly ash"[2] in Lansing, Iowa. Plaintiff delivered these products to Defendant's production facilities.

---

[2] "Fly ash" is a cement replacement that is sometimes mixed in varying amounts in concrete mixtures. Excessive fly ash in a concrete mixture can hinder the setting process.

### C. Sexual Harassment Policy

Defendant's employee handbook contained a sexual harassment policy. Plaintiff read the employee handbook, including the sexual harassment policy, when she was hired in 1995. Defendant's sexual harassment policy provides, in relevant part:

> It is the policy of [Defendant] that all employees are to enjoy a work environment free from all forms of discrimination, including sexual harassment. Sexual harassment, whether by supervisory or non-supervisory personnel, is prohibited. Any employee who engages in sexual harassment will receive appropriate discipline, up to and including termination. Sexual harassment includes offensive flirtation, unwelcome sexual advances or propositions, verbal abuse of a sexual nature, sexually graphic or degrading comments about an individual or his/her appearance, the display of sexually suggestive objects or pictures, and any offensive or abusive physical contact of a sexual nature.

Defendant's Appendix ("Def. App'x") (docket nos. 15-3 & 15-4), at 109.

Defendant's policy also contained a sexual harassment complaint procedure, which provides:

> If you encounter conduct which you believe violates this policy against sexual harassment, you may submit a complaint orally or in writing to your supervisor, or to any of the owners of the Company listed in the front of this handbook directly. You must not assume that the Company knows of the conduct unless such a complaint is made. There will be no retaliation against any employee for filing a complaint or against any person for participating in the complaint procedure. Each complaint will be investigated, and confidentiality will be maintained to the extent it is consistent with an effective investigation. If sexual harassment is found, action will be taken to end the harassment and prevent further recurrence of the misconduct.

*Id.* Plaintiff understood that Defendant's policy directed her to make sexual harassment complaints orally or in writing to her supervisor or to any listed owner of the company.

Plaintiff understood that Defendant considered sexual harassment "non-tolerable." *Id.* at 30-31.

## D. Eugene Schmitt

Shortly after Plaintiff began work, an employee named Eugene Schmitt began to harass Plaintiff. Schmitt managed Defendant's Lawler, Iowa plant until 2002. Schmitt was also the "tire manager" for the entire company. Plaintiff's Brief ("Pl. Brief") (docket no. 20-1), at 1. As the tire manager, Schmitt was responsible for ensuring Defendant's trucks received new tires when needed.

Schmitt urinated in Plaintiff's presence, spit chewing tobacco where Plaintiff walked and slapped Plaintiff's buttocks "at least four times."[3] *Id.* at 19. On one occasion, Plaintiff was bent down working on a tire. Schmitt approached Plaintiff in a manner that caused the zipper area of his pants to be at approximately the same level as Plaintiff's face and about one and a half feet away. Schmitt told Plaintiff that she was "just the right height." Pl. App'x at 154. Plaintiff did not report this conduct to management or the owners of the company.

In 2002, Keith Panos replaced Schmitt as the manager of the Lawler plant. It is unclear whether Schmitt continued to work at the Lawler plant after 2002. However, Schmitt retained his position as tire manager.

In July of 2003, Plaintiff had a heated confrontation with Schmitt at the Lawler plant. Schmitt "scream[ed]" at Plaintiff that she should be able to change her tires like some of the male drivers. Pl. Brief at 3. Plaintiff told Schmitt to "go sit back down and resume counting cars." Pl. App'x at 150. Plaintiff and Schmitt then exchanged profanities, both telling the other, "fuck you." Def. App'x at 23.

---

[3] These incidents apparently occurred prior to July of 2003. However, Plaintiff does not otherwise indicate when or how often these incidents occurred.

### E. Plaintiff Reports Schmitt's Behavior

On July 28, 2003, Plaintiff complained of Schmitt's behavior. Specifically, Plaintiff complained to Defendant's Safety Director, Joanie Groth, and the Vice President of Defendant's Iowa Division, Harlan Taylor. Plaintiff did not report Schmitt's behavior to her supervisor or to any owner. Taylor told Plaintiff that he would "take care of it." *Id.* at 22. Plaintiff did not hear back from Taylor and was not told whether Schmitt was disciplined. However, both Taylor and Groth testified that they spoke to Schmitt and told him that the harassment must stop. Taylor told Schmitt that the harassment was "not tolerated." *Id.* at 94.

After Plaintiff's complaint, Schmitt's verbal harassment stopped and Schmitt did not speak to Plaintiff. Plaintiff acknowledges that "[t]he extreme overt sexual harassment stopped" after her complaint. Pl. App'x at 150. Groth later spoke to Plaintiff and "asked how [Schmitt] was being" and whether Schmitt "was leaving [Plaintiff] alone or whatever."[4] Def. App'x at 30. Plaintiff and Brenda Winzenberg, one of Defendant's dispatchers, also took steps to separate Plaintiff and Schmitt. Plaintiff began to unload her

---

[4] Plaintiff testified at her deposition that Groth made these statements to her. In her "Response to Defendant's Statement of Undisputed Material Facts" (docket no. 20-2), however, Plaintiff states that this fact is "admitted with explanation" and states that she "has no recollection of Groth contacting her regarding [Schmitt's] conduct." Response at ¶ 18. In support of this statement, Plaintiff cites her own affidavit, in which she states that she was "never informed as to whether [Schmitt] was disciplined, or if he was, what the discipline was." Pl. App'x at 154. The court does not construe this as a denial or direct contradiction of Plaintiff's deposition testimony. To the extent it could be construed as a denial or a direct contradiction, the court notes that Plaintiff cannot create sham issues of material fact by contradicting her own previous testimony. *See City of St. Joseph v. Southwestern Bell Tel.*, 439 F.3d 468, 475-76 (8th Cir. 2006) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983)) ("[A]n affidavit filed by the plaintiff in opposition to a motion for summary judgment that directly contradicted the plaintiff's previous deposition testimony was insufficient to create a genuine issue of material fact under Rule 56.")

truck prior to Schmitt's arrival in the morning, and other similar arrangements were made to minimize her contact with Schmitt.

### F. Schmitt's Post-Reporting Behavior

Between Plaintiff's 2003 complaint and her termination on December 1, 2006, Schmitt committed several acts that Plaintiff considered harassing. On one occasion, Plaintiff was refueling her truck when Schmitt drove by and continuously honked his horn and then sniffed his finger and licked his mustache. Plaintiff believed Schmitt's conduct indicated oral or digital sex. On another occasion, Schmitt drove by Plaintiff's home and sniffed his finger. On another occasion, Plaintiff was following Schmitt into the Lawler plant and Schmitt slammed the door in Plaintiff's face. Plaintiff never reported these incidents.

Schmitt also allegedly made statements to other employees that Plaintiff found offensive. In 2005 or 2006, an employee, Shawn Moody, told Plaintiff that Schmitt was spreading a rumor that Plaintiff had an intimate relationship with Panos. On another occasion, Schmitt allegedly told Panos that Plaintiff made a mistake and a supervisor was going to write her up. However, Plaintiff was never disciplined for any alleged mistake. Plaintiff never reported these incidents.

### G. Offensive Behavior by Other Employees

After Plaintiff's 2003 complaint, other employees also treated Plaintiff in a manner that she found offensive. Two co-workers, Toni Seevers and Keith Glaser, asked Plaintiff if her "boob" or "tit" was ringing because Plaintiff kept her cell phone in the strap of her brassiere and used a vibrating ring. Def. App'x at 49. Seevers also asked Plaintiff if she was "pissing in [Harlan Taylor's] Cheerios" because Plaintiff was unhappy with the amount of work she was getting. *Id.* During a Christmas party in 2004, a co-worker, Craig Miller, unzipped Plaintiff's shirt in front of co-workers. Another co-worker, Bob Dreckman, called Plaintiff a "dizzy bitch" on multiple occasions. *Id.* 52. Glaser also

allegedly asked Panos if he and Plaintiff were leaving "dick tracks" on a desk. *Id.* at 49. Plaintiff never reported any of these incidents to her supervisor or the listed owners of the company.

### H. *Joanie Groth*

Sometime in 2005, Plaintiff observed Joanie Groth kiss or be kissed by Schmitt. Plaintiff and other employees also observed Groth wear clothing that they considered inappropriate for work at a concrete company. Other employees allegedly witnessed Groth engage in sexually inappropriate behavior, such as "mooning" other employees.[5] In 2001, prior to Groth becoming Safety Director, Jon Leiran went to Defendant's Waukon, Iowa plant "after hours" and observed Groth and a male employee after they had possibly engaged in a sex act.[6] Pl. App'x at 172. Schmitt also told Plaintiff that he was a "good friend" of Defendant's CEO, Roger Croell, and Groth. This caused Plaintiff to believe that Schmitt was somehow protected from discipline.

### I. *Fly Ash Mistake*

On November 28, 2006, Plaintiff delivered a load of fly ash to Defendant's New Hampton plant. Plaintiff could not find the plant manager or any other personnel when she arrived. Plaintiff mistakenly hooked her unloading pipe to the cement silo pipe. Consequently, Plaintiff blew fly ash into the cement silo for approximately four minutes. Plaintiff knew that it could cost Defendant money if the concrete in the silo was used without knowledge of the fly ash content. Plaintiff also knew that Defendant's policy required her to report such mistakes to her supervisor and assist with the completion of an

---

[5] Most of the factual allegations regarding Groth's alleged conduct are contained in the two affidavits that are the subject of Defendant's Motion to Strike. As previously noted, the court deems it appropriate to consider the facts raised in the affidavits for the purpose of ruling on the Motion.

[6] Plaintiff does not state if she was ever aware of Leiran's observation, and if so, when she became aware of it.

incident report.

After realizing her mistake, Plaintiff was unable to find the New Hampton manager, Tom Holschlag, or any other employee. Plaintiff did not complete a report or leave any other message at the New Hampton plant. Plaintiff returned to the Lawler plant and reported the mistake to Panos. Panos unsuccessfully attempted to contact Holschlag on the company radio. Panos then telephoned what Plaintiff assumed was the New Hampton plant. Plaintiff left for a doctor's appointment before Panos concluded this conversation. During this telephone coversation, Panos actually spoke with a mechanic at the New Hampton plant and asked that Holschlag return his call. Holschlag never returned Panos' call and therefore was not informed of Plaintiff's mistake.

On November 29, 2006, Defendant's New Hampton plant delivered approximately 24 yards of concrete to a contractor at Sparboe Foods in New Hampton. The concrete was poured at the job site. On November 30, 2006, Defendant was notified that the concrete was not setting properly. Harlan Taylor went to the site and discovered that the concrete remained soft. Defendant ultimately had to remove the concrete and replace it. This incident cost Defendant approximately $6,600.

Harlan Taylor investigated the defect and discovered fly ash in the cement pipe and silo at the New Hampton plant. Taylor learned that Plaintiff was the last person to deliver fly ash to the New Hampton plant. Taylor further discovered that nobody had informed Holschlag of Plaintiff's mistake.

### J. Termination

On December 1, 2006, Plaintiff's daughter, Danielle Myers, was approached at her workplace by Paula Holschlag, Tom Holschlag's wife. Paula Holschlag told Danielle Myers that Taylor discovered Plaintiff's error and had noted that Plaintiff failed to report the mistake. Paula Holschlag told Danielle Myers that Plaintiff was going to be fired "because this had lost [Defendant] a million dollar job." Pl. App'x at 168. Danielle

Myers contacted Plaintiff and gave her this information.

Later that same date, Taylor held a meeting with Plaintiff. Plaintiff admitted to Taylor that she had blown fly ash into the cement silo. Taylor asked Plaintiff if she had reported her mistake to anyone. Plaintiff responded that she had not reported it. Taylor then terminated Plaintiff's employment based on her failure to report the incident. Plaintiff later testified that she did not tell Taylor she had reported the mistake to Panos because, based on Danielle Myers's conversation with Paula Holschlag, Plaintiff already knew that she would be fired and she did not want Panos to get into trouble.

### K. ICRC and EEOC Charges

In March of 2007, Plaintiff filed a charge of employment discrimination with the Iowa Civil Rights Commission ("ICRC"). The charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The ICRC conducted an investigation and issued a finding of no probable cause for Plaintiff's allegations. The EEOC was unable to conclude whether a Title VII violation occurred. On March 10, 2008, the EEOC issued Plaintiff a right-to-sue letter.

## VII. ANALYSIS

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that Defendant violated Title VII by: (1) terminating her employment because she is a woman; (2) terminating her employment in retaliation for her complaint of sexual harassment; (3) treating her differently with regard to work conditions because she is female; and (4) subjecting her to a hostile work environment.

Defendant asks the court to grant the Motion and dismiss all of Plaintiff's claims. Plaintiff resists the Motion in its entirety.

## A. Termination Based on Sex

In a Title VII sex discrimination claim, a plaintiff may survive a defendant's motion for summary judgment in one of two ways. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). First, the plaintiff may present "'direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" *Id.* (quoting *Russell v. City of Kan. City, Mo.*, 414 F.3d 863, 866 (8th Cir. 2005)). Second, "if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McGinnis*, 496 F.3d at 873. The court addresses each of these theories, in turn.

### 1. Direct evidence

Plaintiff argues that there is direct evidence that sex discrimination motivated Defendants's decision to terminate her employment. First, Plaintiff contends that on her first day of work in 1995, Taylor, the Vice President of Defendant's Iowa Division, "was hostile and unwelcoming, telling [Plaintiff] she did not know enough to be a powder hauler." Pl. Brief at 10. Second, Plaintiff argues that Taylor expressed hostility during Plaintiff's entire employment by repeatedly assigning her trucks with mechanical and/or safety issues and by failing to fix Plaintiff's trucks. Plaintiff contends that this is direct evidence that sex discrimination motivated Defendant's decision to terminate Plaintiff.

"Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse employment decision." *McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 861 (8th Cir. 2009). Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." *Id.*

"[S]tray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) (citations and quotations omitted).

Although Taylor was a decisionmaker in Plaintiff's termination, his statement in 1995 that Plaintiff "did not know enough to be a powder hauler" is "unrelated to the decisional process" to terminate Plaintiff's employment in 2006. *Id.* The eleven-year gap between Taylor's statement and Plaintiff's termination also undermines Plaintiff's claim that the statement constitutes direct evidence. *See, e.g., Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007) (holding that comments made more than four months prior to the adverse employment action were not related to the decision making process and therefore were not direct evidence). Further, an inference must be drawn to connect Taylor's statement to any discriminatory motivation. Taylor's statement did not indicate why he thought Plaintiff could not do the job and, standing alone, reflects no discriminatory bias based on sex. Accordingly, the court finds that this statement is not direct evidence of a discriminatory animus with regard to Plaintiff's termination.

The court also finds that Taylor's alleged hostility toward Plaintiff during the course of her eleven-year employment does not constitute direct evidence of sex discrimination. Plaintiff contends that Taylor's assignment of trucks with mechanical and/or safety problems is direct evidence that sex discrimination motivated her termination. The court disagrees. This evidence does not show a "specific link between the alleged discriminatory animus and the challenged decision." *McGinnis*, 496 F.3d at 873. Rather, it is the type of evidence most typically used to create an inference of discrimination under the *McDonnell-Douglas* analysis. Plaintiff also fails to put forth evidence that Taylor assigned her defective trucks because she is a woman. Further, Plaintiff's contention that Taylor assigned her defective trucks because he did not like her is not direct evidence that sex discrimination motivated his decision to terminate Plaintiff's employment. In short,

"[n]one of [Plaintiff's] proof establishes a direct link between [her] discharge and any bias against [her] because [she] is a [woman]." *McCullough*, 559 F.3d at 861. Accordingly, the court turns to consider whether Plaintiff has created an inference of sex discrimination under the *McDonnell-Douglas* burden-shifting framework.

### 2. *Inference of sex discrimination*

#### a. **McDonnell Douglas** *framework*

Under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of sex discrimination. That is, Plaintiff must show that: (1) she is within the protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of sex discrimination. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007). If Plaintiff establishes a prima facie case of sex discrimination, a presumption of discrimination arises. *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). The burden then shifts to Defendant to put forth a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* at 832. "If [Defendant] can articulate a nondiscriminatory reason, the burden returns to [Plaintiff] to prove that the proffered reason is pretextual." *Id.*

#### b. *Analysis*

Defendant argues that Plaintiff has not established a prima facie case because the circumstances of Plaintiff's termination do not permit an inference of sex discrimination. Specifically, Defendant argues that no male employees committed a mistake comparable to Plaintiff's and failed to report it. Plaintiff contends that Taylor made the decision to terminate her without conducting an adequate investigation into the cause of the problems with the Sparboe concrete pour. Plaintiff also argues that she properly discharged her duties because she informed Panos, her plant manager, of the fly ash mistake. Finally, Plaintiff asserts that male employees made mistakes similar to hers but were not terminated.

For purposes of the instant Order, the court assumes without deciding that Plaintiff has established a prima facie case of sex discrimination. Defendant argues that, even if Plaintiff can establish a prima facie case of sex discrimination, it has put forth a legitimate, nondiscriminatory reason for Plaintiff's termination and that Plaintiff fails to establish that reason was a pretext for discrimination. Specifically, Defendant maintains that it fired Plaintiff because she failed to report her fly ash mistake.

The court finds that Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. It is undisputed that Defendant had a policy that required employees to report such incidents to their supervisor and assist with the completion of an incident report. It is also undisputed that Taylor asked Plaintiff at their December 1, 2006 meeting if Plaintiff reported her mistake and Plaintiff told Taylor that she had not reported it. While Plaintiff insists that she reported the mistake to Panos, this fact is not material. Defendant has consistently maintained that it fired Plaintiff not for the mistake itself but for her supposed failure to report the mistake. Thus, Defendant asserts it fired Plaintiff for her admitted, although now disputed, failure to comply with Defendant's policy requiring her to report the incident. Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) ("We have consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee"). Because Defendant has articulated a legitimate, nondiscriminatory reason for firing Plaintiff, the burden returns to Plaintiff to prove that Defendant's proffered reason is pretextual. *Bearden*, 529 F.3d at 831.

To demonstrate pretext, Plaintiff "must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008). The Eighth Circuit Court of Appeals has explained that:

> This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the [employer's] neutral explanations. Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; [she] must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*Id.* (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)).

There are several established methods of demonstrating pretext. For example, a plaintiff may show that the proffered explanation has no basis in fact. *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001). A plaintiff may also establish pretext by showing that similarly situated males received more favorable treatment. *Id.* A plaintiff "can establish pretext by showing that it was unlikely [that] an employer would have acted on the basis of the proffered reason." *Id.* Finally, evidence of a discriminatory attitude in the workplace "may also tend to show that the employer's proffered explanation for the action was not the true reason for the discharge." *Id.*

Plaintiff's first argument appears to be that Defendant's explanation has no basis in fact.[7] That is, Plaintiff argues that she did in fact report the fly ash mistake to Panos, her plant manager. Plaintiff also argues that Defendant failed to conduct an adequate investigation before deciding to fire her and alleges that Taylor had made the decision to terminate her prior to their meeting on December 1, 2006. Plaintiff's argument that she actually reported her mistake to Panos misses the mark. "The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the

---

[7] Plaintiff also contests whether the fly ash content actually caused the setting problems with the Sparboe concrete pour and whether Defendant conducted any kind of investigation or testing on the concrete. *See* Pl. Brief at 13-14. These facts are not material. Defendant has never asserted that it fired Plaintiff because she blew fly ash into the cement silo. Rather, Defendant has consistently maintained that it terminated Plaintiff due to her alleged failure to report the mistake at a time when it could have been corrected.

conduct for which he [or she] was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 861-62 (8th Cir. 2009) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000)); *see also Twymon*, 462 F.3d at 935 ("A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of termination."). Plaintiff does not argue or put forth any evidence that Taylor knew Plaintiff had reported the mistake and decided to fire her anyway. Rather, it is undisputed that Taylor asked Plaintiff at their December 1, 2006 meeting if she had told anyone of her mistake and Plaintiff told him "no." Def. App'x at 40. There is no evidence to suggest that, at the time of Plaintiff's termination, Taylor did not have a good faith belief that Plaintiff had blown fly ash into the cement silo and failed to report it. Plaintiff has failed to present sufficient evidence to demonstrate that Defendant's articulated reason for Plaintiff's termination had no basis in fact.

Plaintiff also argues that similarly situated male employees received more favorable treatment. Plaintiff recounts several examples of male employees who made mistakes and were not terminated as a consequence.[8] At the pretext stage of the *McDonnell Douglas* analysis, the test to determine whether employees are "similarly situated" is "rigorous." *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 858 (8th Cir. 2004). The employees must have been "similarly situated in all relevant respects." *Id.* (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988). For a "discriminatory discipline" claim, like that

---

[8] One employee, Dave Roach, mistakenly brought "retarder" to one of Defendant's plants and an "entire floor" had to be redone. Pl. Statement of Facts at ¶ 35. Tom Holschlag destroyed a radio tower but was not terminated. Chris Throndson destroyed an electric light pole and "the city of Lawler lost power." *Id.* at ¶ 37. An unidentified "male powder hauler" unloaded fly ash into a cement silo but was not terminated. *Id.* at ¶ 38.

alleged by Plaintiff, "employees are similarly situated only when they are involved in or accused of the same offense and are disciplined in different ways." *Id.* Thus, the relevant conduct for establishing pretext in Plaintiff's case is whether any male employees made a mistake, failed to report it and were not terminated. Plaintiff offers ample evidence of mistakes made by male employees. However, Plaintiff fails to put forth any evidence that a male employee failed to report the mistake and was still allowed to keep his job. Such employees are not similarly situated. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005) ("Violations of different company policies do not necessarily support an inference that employees are similarly situated, particularly where one violation is considered more serious than the other"). In fact, Plaintiff concedes that she is unable to identify a single male employee who made a mistake, failed to report the mistake and remained employed by Defendant. The court finds that Plaintiff has failed to present sufficient evidence to support a finding that similarly situated male employees were treated differently.[9]

The court finds that Plaintiff has failed to put forth sufficient evidence such that a reasonable jury could conclude that Defendant's explanation for her termination was pretextual. In light of this finding, the court need not consider whether Plaintiff met her burden to show that "discrimination was the real reason" for her termination. *McNary*, 535 F.3d 765, 769 (8th Cir. 2008). Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's claim that she was terminated because she is a woman.

---

[9] Plaintiff reiterates her argument that she did in fact report her mistake to Panos. For the reasons previously stated, this argument is unavailing. The relevant question "is not whether the employee actually engaged in the conduct for which he [or she] was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough*, 559 F.3d 855, 861-62 (8th Cir. 2009). Plaintiff offers no evidence to suggest that Taylor or Defendant's agents did not have a good faith belief that Plaintiff failed to report the fly ash mistake.

## B. Retaliation Claim

Title VII makes it unlawful for an employer to discriminate against an employee because he or she "has opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* analysis applies to retaliation claims.  *Turner v. Gonzalez*, 421 F.3d 688, 695 (8th Cir. 2005).  To establish a prima facie retaliation case, Plaintiff must show that: "(1) [she] engaged in protected activity; (2) [she] suffered an adverse employment action; and (3) [there was] a causal connection between the protected activity and the adverse employment action."  *Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009) (citing *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006)).  If Plaintiff establishes a prima facie case of retaliation, Defendant must rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions.  *Turner*, 421 F.3d at 696.  If Defendant does so, the burden then "shifts back to [Plaintiff] to show that [Defendant's] reason was pretextual."  *Id.*

Plaintiff alleges that Defendant fired her in retaliation for her 2003 harassment complaint.  Defendant asks the court to dismiss Plaintiff's retaliation claim on the ground that Plaintiff has failed to establish a prima facie case of retaliation.  Specifically, Defendant argues that Plaintiff cannot demonstrate a causal connection between the protected activity and her termination.  Even if Plaintiff has established a prima facie case, Defendant contends that it has put forth a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff cannot meet her burden of demonstrating pretext.  The court first considers whether Plaintiff has established a prima facie case of retaliation.

Plaintiff's sexual harassment complaint in 2003 clearly constitutes a "protected activity."  *See, e.g.*, *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir. 1998) (plaintiff "engaged in statutorily protected activity by making a sexual harassment complaint" to employer's personnel representative).  It is equally clear that Plaintiff's termination was an adverse employment action.  *See, e.g.*, *Van Horn v. Best Buy Stores,*

*L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008) (A plaintiff's "termination is plainly an adverse employment action"). Defendant argues that Plaintiff's retaliation claim fails as a matter of law because Plaintiff cannot show a causal connection between her 2003 sexual harassment complaint and her termination. Plaintiff contends that Defendant was simply waiting for an opportunity to terminate her employment after she complained of harassment in July of 2003.

The court finds that no reasonable jury could conclude that a causal connection exists between Plaintiff's harassment complaint and her termination. "More than a temporal connection between an employee's protected conduct and the adverse employment action is required to create a genuine issue on causation, particularly when the time interval is not very close." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005) (citations omitted). "Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005). "A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." *Hesse*, 394 F.3d at 633 (citing *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999)).

It is undisputed that Plaintiff made her sole sexual harassment complaint in July of 2003. Taylor fired Plaintiff on December 1, 2006—more than three years after her complaint. This extensive time gap, in conjunction with a lack of any other evidence of retaliation, is sufficient to defeat Plaintiff's retaliation claim. *See, e.g.*, *Hesse*, 394 F.3d at 633 (affirming grant of summary judgment in favor of employer on retaliation claim in part because plaintiff's sexual harassment complaint occurred two years before her termination); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) (affirming grant of summary judgment in favor employer on retaliation claim because "the

seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally—and therefore causally—related"). Plaintiff offers no other evidence to support her claim that her termination in 2006 was in retaliation for her complaint more than three years earlier. Plaintiff also fails to offer a persuasive reason to ignore the well-established principle that a long gap between the protected activity and adverse employment action tends to negate any inference of retaliatory motive. The court finds that Plaintiff has failed to establish a prima facie case of retaliation under Title VII. Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's retaliation claim.[10]

## C. Disparate Treatment

Plaintiff also contends that she was subject to disparate treatment by Defendant because she is a woman. Specifically, Plaintiff alleges that Defendant treated her differently than men with regard to the amount of work and the condition of the equipment she was assigned.[11] Defendant asks the court to grant the Motion and dismiss Plaintiff's disparate treatment claim. Defendant argues that Plaintiff has failed to show that she was subject to any disparate treatment during her employment. Defendant also argues that, even if Plaintiff could establish disparate treatment, her claim fails because none of the alleged disparate treatment constituted "adverse employment action." Def. Brief at 20. To establish a prima facie case of disparate treatment on the basis of sex, a plaintiff must

---

[10] The court also notes that, even if Plaintiff could establish a prima facie case of retaliation, Defendant has articulated a legitimate, nondiscriminatory reason for its actions: Plaintiff's admitted failure to report her fly ash mistake. In light of the court's finding in Section VII.A.2.b., *supra*, Plaintiff is unable to establish that Defendant's explanation was a pretext for discrimination.

[11] Most of Plaintiff's brief addressing this claim is devoted to the circumstances surrounding her termination. The court addressed this issue in Sections VII.A. and VII.B., *supra*. Accordingly, the court confines its inquiry here to Plaintiff's claims regarding hours and work equipment.

show that: (1) she is within the protected class; (2) she was qualified to perform her job; (3) she suffered an adverse an employment action; and (4) circumstances permit an inference of sex discrimination. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007).

Plaintiff alleges that Defendant subjected her to disparate treatment because of her sex by assigning her trucks and trailers with numerous mechanical problems and then either failed to repair them or repaired them poorly. Plaintiff alleges that she had to drive trucks during her eleven-year employment that had "doors that would not stay shut, broken axles, engines in need of repair, and broken air conditioners, which resulted in injury." Pl. Statement of Facts at ¶ 14. Plaintiff also alleges that Defendant gave her less work than male employees. Defendant argues that Plaintiff has failed to establish a prima facie case of disparate treatment because she puts forth insufficient evidence to support a finding that Defendant treated her any differently than male employees.

The court finds that there are no genuine issues of material fact as to Plaintiff's claim of disparate treatment regarding her work equipment. The court acknowledges that some equipment Plaintiff used was in poor condition. However, this is not the issue. The issue is whether Plaintiff's equipment was in poor condition relative to that used by male employees and, if so, if that disparity was because of Plaintiff's sex. Plaintiff fails to put forth any evidence regarding the relative condition of equipment assigned to male employees. Indeed, Plaintiff acknowledged that some male employees operated trailers that were older than hers and that, although she did not know the age of the male employees' trucks, she believed some of them were older than hers. Simply put, Plaintiff puts forth no evidence regarding the relative condition of trucks and trailers used by male employees or that hers was inferior. Summary judgment is appropriate in such situations. *See Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007) (affirming grant of summary judgment in favor of employer on disparate treatment claim where plaintiff "provide[d] no

concrete evidence of specific events" in support of her claim that "she was treated differently than similarly-situated male employees" and stating that "[s]uch skeletal allegations, unsupported by specific facts or evidence, are insufficient to create a genuine issue of fact"). Accordingly, the court finds that Plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude that Defendant subjected her to disparate treatment on the basis of sex with regard to her work equipment.

Plaintiff's disparate treatment claim regarding work hours fails for the same reason. Plaintiff acknowledges that Defendant's records show that her hours were "pretty much equal" to the hours of the male powder haulers. Def. App'x at 63. Plaintiff does not dispute the accuracy of Defendant's records and offers no evidence as to the relative hours worked by Defendant's male powder haulers. Plaintiff was also unable to identify any male driver who received hours in her place or was otherwise treated differently than Plaintiff. Rather, Plaintiff's claim with regard to hours appears to be based solely on her subjective belief that Defendant allowed male powder haulers to work more than her. This is insufficient to overcome summary judgment. *See Thomas*, 483 F.3d at 530 (A plaintiff's "own conclusory allegations" of disparate treatment are insufficient to create a genuine issue of fact so as to preclude summary judgment). The court also notes that, even if Plaintiff were able to point to some evidence of a disparity, Plaintiff puts forth no evidence to suggest that such a disparity was based on sex. Accordingly, the court finds that Plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude that Defendant subjected her to disparate treatment on the basis of sex with regard to work hours.

In sum, Plaintiff fails to put forth evidence creating a genuine issue of material fact on her claims of disparate treatment regarding work equipment and hours. Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's disparate

treatment in employment claim.[12]

## D. Hostile Work Environment

Title VII's prohibition on sex discrimination bars sexual harassment that creates a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a prima facie case of sex discrimination based on a hostile work environment, Plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition or privilege of her employment. *Sandoval v. Amer. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009).

"The fourth element involves both objective and subjective components." *Id.* That is, to be actionable, "[t]he harassment must be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe her working conditions have been altered." *Id.* (quoting *Harris*, 510 U.S. at 21-22). The court must consider the totality of the circumstances to determine whether the conduct is sufficiently severe or pervasive. *Duncan v. Gen. Motors. Corp.*, 330 F.3d 928, 934 (8th Cir. 2002). Factors to consider include the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Defendant asks the court to dismiss Plaintiff's hostile work environment claim on three alternative grounds. First, Defendant argues that the alleged harassment was not sufficiently severe or pervasive to constitute an actionable hostile work environment. Second, Defendant argues that it cannot be held liable for the alleged harassment because

---

[12] In light of the court's finding that Plaintiff failed to establish a prima facie case of disparate treatment, the court need not address Defendant's argument that these allegations, if true, do not constitute adverse employment action.

Plaintiff cannot show that it knew or should have known of the alleged harassment. Third, Defendant argues that it is entitled to the affirmative defense recognized by the United States Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). The court will address each of these arguments, in turn.

### 1. Severe or pervasive harassment

The severe or pervasive requirement for an actionable hostile work environment claim "is a high threshold." *Duncan*, 300 F.3d at 934. "Title VII is 'not designed to purge the workplace of vulgarity.'" *Id.* (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). Thus, the standards for actionable hostile work environment claims "are designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender related jokes, and occasional teasing.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

To overcome summary judgment on her hostile work environment claim, Plaintiff must present evidence from which a reasonable jury could find that the harassment "was more than merely offensive, immature or unprofessional, for conduct that does not exceed that threshold of severity is insufficient to constitute a prima facie case of sexual harassment." *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1027 (8th Cir. 2004). Plaintiff must show that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Duncan*, 300 F.3d at 934 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Plaintiff must also establish that the conduct was "extreme in nature and not merely rude or unpleasant." *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting

26

*Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)).

### a.      *Harassment prior to July 28, 2003*

As an initial matter, the court confines its inquiry to the period between Plaintiff's complaint on July 28, 2003 and her termination on December 1, 2006.  Plaintiff's brief and affidavit refer to several instances of alleged harassment that either occurred before her 2003 complaint or lack any indication as to when the alleged incidents occurred. Plaintiff does not argue that any harassment directed at her prior to 2003 occurred in the presence of management or owners or that they were otherwise aware of it.  Defendant had a sexual harassment policy in place throughout Plaintiff's employment.  Plaintiff was aware of the policy and read it when she began working for Defendant.  It is undisputed that Plaintiff did not report any harassment to a supervisor or listed owner until July 28, 2003. In response to Plaintiff's complaint, Taylor and Groth spoke to Schmitt and told him the harassment must stop.  Plaintiff acknowledges that Schmitt's verbal harassment and the "extreme overt sexual harassment" stopped after her complaint and that she never complained of any harassment again prior to her termination.  Pl. App'x at 150.

Defendant cannot be held liable for an alleged hostile work environment that existed before July 28, 2003.  Plaintiff did not bring the alleged harassment to Defendant's attention and Defendant therefore had no opportunity to correct it.  *See, e.g., Anda v. Wickes Furn. Co.*, 517 F.3d 526, 532 (8th Cir. 2008) (affirming dismissal of sexual harassment claim in part because plaintiff failed to fully notify her employer of the harassment and there was no other evidence in the record that tended to show that the employer should have known of the harassment); *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1125 (8th Cir. 2007) (employer could not be held liable for pre-complaint harassment because, although it had a written policy against sexual harassment and a complaint procedure, no employee reported the alleged harassment).  There is also no other evidence that Defendant was or should have been aware of any harassment of

Plaintiff prior to Plaintiff submitting her complaint. Accordingly, the relevant question is whether Plaintiff was subjected to severe or pervasive sexual harassment after her 2003 complaint.[13]

### b. Harassment after July 28, 2003

Plaintiff testified that the following harassment[14] occurred between her complaint on July 28, 2003 and her termination on December 1, 2006:

> (1) On one occasion, Schmitt continuously honked his horn at the Lawler plant, and then sniffed his finger and licked his mustache in Plaintiff's presence.

> (2) On one occasion, Schmitt drove by Plaintiff's home and sniffed his finger.

> (3) Schmitt once slammed a door in Plaintiff's face.

> (4) Schmitt spread a rumor about a relationship between Plaintiff and Panos and about Plaintiff being disciplined for a mistake.

> (5) Two co-workers, Toni Seevers and Keith Glaser, asked Plaintiff if her "boob" or "tit" was vibrating because she carried her cell phone inside her brassiere strap and used a vibrating ring.

---

[13] The court also notes that, even if it considered the alleged incidents that occurred prior to Plaintiff's 2003 complaint, these actions were not sufficiently severe or pervasive. The total alleged harassment carried out over Plaintiff's eleven years of employment consists largely of sporadic offensive acts by Schmitt.

[14] The court notes that some of the alleged harassment, such as Schmitt slamming the door and Seevers asking if Plaintiff was "pissing in [Taylor's] Cheerios" was arguably not "based on" Plaintiff's sex. "Generalized harassment in the workplace is not illegal under Title VII." *Hesse v. Avis Rent A Car Sys.* Inc., 394 F.3d 624, 630 (8th Cir. 2005). Title VII prohibits only harassment that is "based on" sex. *See Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005) ("[T]o succeed on a hostile work environment claim under Title VII, a plaintiff must show that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'").

(6) Toni Seevers asked Plaintiff if she was "pissing in [Taylor's] Cheerios" because Plaintiff was unhappy with the amount of work she was getting.

(7) During a company Christmas party in 2004, a co-worker, Craig Miller, unzipped Plaintiff's shirt in front of co-workers.

(8) A co-worker, Bob Dreckman, called Plaintiff a "dizzy bitch" approximately 20 times.

(9) A co-worker asked Panos if he and Plaintiff had left "dick tracks" on a desk.

The court finds that the alleged harassment after Plaintiff's 2003 complaint was not "in the aggregate so severe and extreme that a reasonable person would find that the terms and conditions of [Plaintiff's] employment had been altered." *Duncan*, 300 F.3d at 934. The alleged harassment consists of sporadic incidents that occurred over the course of more than three years. *See Hesse,* 394 F.3d at 630 ("To violate Title VII, the conduct must be extreme, and 'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment'") (quoting *Faragher*, 524 U.S. at 788). With the exception of Miller unzipping Plaintiff's shirt, none of the alleged harassment was physically threatening or humiliating. No other incident involved touching of any kind. Plaintiff also does not argue that any of these incidents "unreasonably interfere[d] with [her] work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Rather, almost all of the alleged harassment involved "merely offensive, immature or unprofessional" conduct such as vulgar language and name calling. *Henthorn*, 359 F.3d at 1027. Plaintiff agreed in her deposition that Schmitt's conduct improved after her 2003 complaint, and she never complained about any harassment thereafter. These factors, coupled with the apparent infrequency of the conduct, establish that the alleged harassment was not sufficiently severe or pervasive to constitute an actionable hostile work environment. While the conduct of Schmitt and several other employees was certainly inappropriate, rude and distasteful, it does not meet the high threshold required to establish

severe or pervasive harassment.[15]  Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's hostile work environment claim.

## 2.  Defendant's knowledge of harassment

In light of the court's finding that the alleged harassment was not sufficiently severe or pervasive, the court need not consider whether Defendant knew or should have known of the alleged harassment.  The court notes, however, that Plaintiff has put forth insufficient evidence to support a finding that Defendant had knowledge of the harassment.

The imposition of liability on an employer for sexual harassment depends on whether the alleged harassers were co-workers or supervisors of the plaintiff.  If the harasser is a co-worker, an employer may be liable if it "knew or should have known of the conduct, and failed to take proper remedial action."  *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007).  If the harasser is a supervisor, and no tangible employment action was taken, an employer "is vicariously liable for the harassment unless it can establish the affirmative defense defined in [*Ellerth*]."  *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 850 (8th Cir. 2005) (citations omitted).  The parties appear to

---

[15] *See Duncan*, 300 F.3d at 935 (holding that harassment was not sufficiently severe or pervasive where alleged harasser once propositioned plaintiff for a relationship, directed plaintiff to use a computer that contained a screen saver of a naked woman, unnecessarily touched plaintiff's hand, kept a pacifier shaped like a penis in his office which he specifically showed to plaintiff on two occasions, created a poster portraying plaintiff as the president of the "Man Hater's Club of America" and asked plaintiff to draw a planter shaped like a slouched man that contained a hole allowing a cactus to protrude); *see also Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843-44 (8th Cir. 2002) (holding that, in racial harassment context, conduct was not sufficiently severe or pervasive where, over a four to five year period, plaintiff experienced the following: a co-worker told plaintiff that another employee used a racial epithet to describe plaintiff on three occasions, plaintiff twice heard about racial epithets directed at other African American employees, a co-worker made an obscene gesture to plaintiff, copies of a "poem" with racist, sexist and homophobic messages were "strewn about the plant" and graffiti portraying "KKK," a swastika and a hooded figure appeared on the walls of the men's restroom).

proceed on the assumption that neither Schmitt nor any of the other alleged harassers were Plaintiff's supervisor.[16] Accordingly, Defendant can be liable for the alleged harassment only if Plaintiff can show that Defendant "knew or should have known of the harassment and failed to take prompt remedial action." *Sandoval*, 578 F.3d at 801.

An employer's "knowledge" for purposes of sexual harassment liability can be either actual or constructive. Where an employer has a specified complaint procedure that identifies the persons to be notified of harassment, "actual notice is established when the employee notifies those individuals." *Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008). "Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it." *Weger v. City of Ladue*, 500 F.3d 710, 721 (8th Cir. 2007) (quoting *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003)); *see also Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) ("'[A]n employer may be charged with constructive knowledge of previous sexual harassment . . . if the harassment was so broad in scope, and so permeated the workplace, that it must have come to the attention of someone authorized to do something about it.'") (quoting *Fall v. Ind. Univ. Bd. of Tr.*, 12 F. Supp. 2d 870, 882 (N.D.Ind. 1998)); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 n. 3 (8th Cir. 1997) (stating that constructive notice may be shown if "the harassment was obvious to everyone").

### a. *Actual knowledge*

Defendant argues that Plaintiff failed entirely to report any of the alleged harassment

---

[16] The court also notes that to be considered a supervisor, "the alleged harasser must have had the power . . . to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." *Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004). Plaintiff does not argue, and the facts do not support, a conclusion that any of the alleged harassers had the authority to take these actions.

that occurred after her 2003 complaint.  Plaintiff concedes this point.  However, Plaintiff contends that she did not report the harassment because she was convinced that doing so was futile.   Plaintiff contends that she "did not make any complaints due to the conduct of those who were to respond to her complaints and her resulting perception that Schmitt was a 'protected' employee."[17]   Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. Response") (docket no. 20-2), at ¶ 19.  Plaintiff cites no legal authority in support of this argument and apparently Plaintiff bases her belief on two grounds.   First, Plaintiff and other employees observed Groth engage in sexually inappropriate conduct in the workplace.  Second, Schmitt told Plaintiff that he was "good friends" with Groth and Roger Croell, which caused Plaintiff to believe Schmitt was a "protected" employee.  *Id.*

The court finds that Plaintiff's arguments do not excuse her failure to report any of the alleged harassment.  Defendant's sexual harassment policy provided that employees were to direct complaints "to [the complainant's] supervisor, or to any of the [listed] owners of the Company . . . ."  Def. App'x at 109.   Groth was neither Plaintiff's supervisor nor a listed owner of the company.  Because the Policy did not direct Plaintiff to report harassment to Groth, Plaintiff's argument that Groth's conduct undermined her

---

[17] This "conduct" apparently refers to several incidents contained in affidavits submitted by Troester and Leiran, two of Defendant's former employees.  These affidavits are the subject of the Motion to Strike.  Having considered the facts raised in the affidavits, the court concludes that they do not create a genuine issue of material fact with regard to any of Plaintiff's claims.  Plaintiff relies on the affidavits to establish some kind of sexual misconduct by Groth.  For example, Leiran states that sometime before June of 2001 (prior to Groth becoming Safety Director), he went to the Waukon, Iowa plant "after hours" and observed what he believed to be Groth and another plant manager shortly after they possibly engaged in a sex act.  For the reasons stated in Section VII.D.2.a., these facts are not material to Plaintiff's claim.  This allegation has no bearing on the alleged futility of Defendant's reporting policy as the policy did not direct employees to make complaints to Groth.

confidence in the complaint procedure is unconvincing.

Further, Plaintiff *did* direct her 2003 complaint to both Groth and Taylor. Plaintiff testified that Groth later contacted her to ask if Schmitt's harassment had stopped. Plaintiff also stated that Schmitt's verbal harassment and "extreme overt sexual harassment" stopped after her 2003 complaint. Pl. App'x at 150. The fact that Plaintiff reported the harassment to Taylor and Groth in 2003, coupled with Plaintiff's acknowledgment that Schmitt's harassment largely subsided thereafter, undermines Plaintiff's contention that she thought the reporting procedure was futile. Defendant maintained a policy that identified the persons to be notified of harassment. Plaintiff failed to utilize this procedure. Plaintiff cannot overcome her failure to report by simply declaring that reporting was futile. *Cf. Weger v. City of Ladue*, 500 F.3d 710, 725 (8th Cir. 2007) ("[A]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty . . . to alert the employer to the allegedly hostile environment.") (quoting *Williams v. Mo. Dept. of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2006)). Accordingly, the court finds that there are no genuine issues of material fact as to whether Defendant had actual knowledge of the alleged harassment after July of 2003.

### b. *Constructive knowledge*

The court also finds that Plaintiff has put forth insufficient evidence to support a finding that Defendant had constructive knowledge of the alleged harassment that occurred after 2003. There is no evidence to suggest that the alleged harassment was "so severe and pervasive that management reasonably should have known of it." *Weger*, 500 F.3d at 721 (quoting *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003)). Rather, the harassment consists of sporadic instances carried out by different employees at several different locations over a period of more than three years. Plaintiff offers little evidence as to the time and/or locations of the incidents or who was present. Several instances

apparently did not even occur at the workplace.[18] With the exception of Miller unzipping Plaintiff's shirt at a company party, which occurred in the presence of the Elma plant manager, Plaintiff does not allege that any of the alleged harassment was carried out in the presence of management or the owners of the company. Plaintiff acknowledges that "[n]o senior management personnel were in the area to see [the shirt incident]." Pl. App'x at 156. Plaintiff also does not allege that other employees were subjected to sexual harassment during her employment or that Defendant had received complaints regarding any of the other alleged harassers. *Cf. Sandoval*, 578 F.3d at 801-02 (reversing summary judgment on hostile work environment claim because employer may have had constructive notice of "rampant sexual harassment" based in part on "nearly one hundred similar complaints made during the time plaintiffs were employed"). The court finds that there are no genuine issues of material fact as to whether Defendant had constructive knowledge of the alleged harassment.

    *c.*    *Summary*

In summary, the court finds that Plaintiff has failed to put forth sufficient evidence to support a finding that Defendant knew or should have known of the alleged harassment. It is undisputed that Plaintiff did not report any harassment after July of 2003 and the court finds that the evidence is insufficient to charge Defendant with constructive knowledge of the alleged harassment. Accordingly, the court grants the Motion to the extent it seeks dismissal of Plaintiff's hostile work environment claim on this ground as well.[19]

---

[18] Plaintiff testified that Seevers called her on a Sunday and other times called her at "3:00, 4:00, 5:00 in the morning." Def. App'x at 49. Plaintiff also testified that Schmitt once drove by her home in Lawler and sniffed his finger. *Id.* at 23.

[19] In light of the court's findings that (1) the harassment was not sufficiently severe or pervasive and (2) Defendant did not have actual or constructive knowledge of the harassment, the court need not consider whether Defendant took proper remedial measures. The court notes, however, that Taylor and Groth both spoke to Schmitt after

(continued…)

### 3. Ellerth-Faragher *defense*

Defendant also argues that Plaintiff's hostile work environment claim fails because it is barred by the *Ellerth-Faragher* defense. This defense protects an employer from liability in cases of supervisor harassment when no tangible employment action is taken. To establish the defense, an employer must show that: "(1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm." *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008).

To the extent Plaintiff is alleging sexual harassment by supervisors, the court concludes that Defendant has established the *Ellerth-Faragher* defense. Defendant exercised reasonable care to prevent and promptly correct any sexual harassment. While not dispositive, an employer's "distribution of a valid antiharassment policy provides compelling proof that it exercised reasonable care in preventing and promptly correcting sexual harassment . . . ." *Weger*, 500 F.3d at 719 (citation omitted). Defendant's policy provided that sexual harassment complaints could be made with the employee's supervisor or any of the owners listed in the front of the employee handbook. The owners' names were listed along with their home phone numbers. Defendant's policy also provided that there would be no retaliation against any employee for filing a complaint or participating in the complaint procedure. Defendant's policy provided that confidentiality "[would] be maintained to the extent it is consistent with effective investigation." Def. App'x at 109.

---

[19](...continued)
the 2003 complaint and told him the harassment must stop. Taylor told Schmitt that the harassment was "not tolerated." Def. App'x at 94. Groth later contacted Plaintiff to see if the situation had improved. Plaintiff acknowledged in her deposition and affidavit that the harassment diminished following her complaint and she did not thereafter report any harassment.

The court finds that there are no genuine issues of material fact regarding the reasonableness of Defendant's sexual harassment policy. *See Williams*, 407 F.3d at 977 (finding that employer met burden on first prong of *Ellerth-Faragher* defense by having in place a policy that allowed complaints to multiple employees, assured confidentiality and contained a non-retaliation provision). Accordingly, Defendant has established the first requirement of the *Ellerth-Faragher* defense.

The court also finds that Defendant has satisfied the second requirement of the *Ellerth-Faragher* defense. That is, Defendant has shown that Plaintiff unreasonably failed to report the alleged harassment. Plaintiff contends that she was harassed on multiple occasions by different employees after her 2003 complaint. Plaintiff concedes that she never reported this harassment prior to her termination in December of 2006. "A showing that an employee failed to avail him- or herself of a proper complaint procedure 'will normally suffice to satisfy the employer's burden under the second element of the defense.'" *Adams v. O'Reilly Auto., Inc.*, 538 F.3d 926, 932 (8th Cir. 2008) (quoting *Faragher*, 524 U.S. 775, 807-08 (1998)). Plaintiff failed to report any sexual harassment after her 2003 complaint. Accordingly, Defendant has established the second prong of the *Ellerth-Faragher* defense.

## VIII. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED**:

(1)     The Motion to Strike (docket no. 23) is **DENIED**;

(2)     The Motion for Summary Judgment (docket no. 15) is **GRANTED**; and

(3)     The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Croell Redi-Mix, Inc. and to **CLOSE THIS CASE**.

**DATED** this 4th day of December, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA